UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LUSTER RAY NELSON, II,

                Plaintiff,             Case No. 1:20-cv-41

v.                                 Honorable Paul L. Maloney

K SHAFFER et al.,

                Defendants.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under Federal Rule of Civil Procedure 21, the Court is permitted to drop parties *sua sponte* when the parties have been misjoined. Pursuant to that rule, the Court will drop as misjoined Defendants Bryant, Smith, Rubley, Yore, and Burke and dismiss Plaintiff's claims against them without prejudice.

With regard to the claims that remain, under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendant Rewerts for failure to state a claim. The Court also will dismiss, for failure to

state a claim, Plaintiff's Eighth Amendment and due process claims against remaining Defendants Bashore and Shaffer

### Discussion

I.      **Factual Allegations**

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan.  The events about which he complains occurred at that facility, as well as the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan and the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan.  Plaintiff sues DRF Correctional Officers K. Shaffer and Unknown Bashore; DRF Warden Randee Rewerts; IBC Assistant Resident Unit Supervisor Unknown Bryant; IBC Correctional Officers Unknown Smith and Unknown Rubley; ICF Correctional Officer Unknown Yore; and MDOC Hearing Officer S. Burke.

In his first set of allegations, Plaintiff alleges that he filed multiple grievances while he was incarcerated at DRF.  On September 13, 2018, Defendant Bashore allegedly set Plaintiff up for a misconduct charge for threatening behavior and issued a misconduct ticket for fighting. Sometime later, Defendant Bashore informed Plaintiff, "[T]his is what [your] bitch ass gets for written [sic] grievances on correctional officers."  (Compl., ECF No. 1, PageID.4.)  Plaintiff contends that Bashore's conduct violated Plaintiff's Eighth Amendment rights and was committed in retaliation for Plaintiff's exercise of his First Amendment rights.  He also alleges that the conduct violated the Eighth Amendment and that he was deprived of due process.

That same date, Defendant Shaffer packed up Plaintiff's property, including Plaintiff's television, tape player, food, headphones, and legal documents and damaged Plaintiff's JP5.  Plaintiff asked Shaffer what had happened to his property.  Defendant Shaffer responded, "[Y]ou don't get to live comftable when you write grievences on correctional officers and dont

attempt to write no more grievences  Ill make sure they get thew away." (*Id.* (verbatim).)  Plaintiff alleges that Defendant Shaffer's conduct violated his rights under the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment and was taken in retaliation for the exercise of his rights under the First Amendment.

Plaintiff's next series of allegations involve his incarceration at IBC, where he apparently was housed prior to his confinement at DRF.  Plaintiff does not date all of his allegations, but his earliest dated IBC allegation occurred on February 6, 2019.  Plaintiff alleges that, prior to that date, he had been filing grievances for some time, leading Defendant Bryant to make racially derogatory remarks to Plaintiff over a three-month period.  Bryant's comments included threats to file misconduct charges, to have Plaintiff beaten to death, and to have Plaintiff sent to a Level-V facility.  Plaintiff suggests that Defendant Bryant violated his rights under the Eighth Amendment, the Equal Protection Clause, and the First Amendment.

Plaintiff alleges that, on February 6, 2019, Defendant Smith told Plaintiff that he was good friends with the inspector and that he had seen Plaintiff coming from the control center, where he undoubtedly was complaining about officers and inmates.  Defendant Smith called Plaintiff, among other things, a "rat ass baby raper."  (*Id.*, PageID.5.)  Plaintiff asserts that Defendant Smith engaged in retaliation for Plaintiff's exercise of his First Amendment right to file grievances.

On July 17, 2019, Defendant Rubley allegedly set Plaintiff up for a misconduct charge by placing a razor blade in Plaintiff's area of control.  Defendant Rubley informed Plaintiff that he had "pissed to[o] many staff off" and that he would pay for it in segregation.  (*Id.*)  Plaintiff alleges that Defendant Rubley retaliated against him for the exercise of his First Amendment rights.

Plaintiff complains that, also while Plaintiff was housed at IBC, Defendant S. Burke, a hearing officer for the MDOC, violated Plaintiff's right to due process by not contacting the IBC law library to determine why Plaintiff had not received the books he wanted to assist him in defending the misconduct charge.  Plaintiff also alleges that Defendant Burke failed to review unspecified evidence.  Plaintiff asserts that Defendant Burke deprived him of his right to due process.

Finally, Plaintiff alleges that, on August 22, 2019, when Plaintiff was housed at ICF, Defendant Correctional Officer Yore shut Plaintiff's window.  Then Plaintiff asked why, Defendant Yore responded, "[B]ecause your weird, your weird, freak."  (*Id.* (verbatim).)  When Plaintiff complained about the language Defendant Yore used, Yore told Plaintiff not to talk to her.  She told Plaintiff to stand there, because she did not want to look at him.  When chow time arrived, Defendant Yore allegedly opened the food slot and flung Plaintiff's food onto his cell floor, stating, "[T]his is all for my friend[]s across the street . . . I, know you, never had a ticket from a black officer but you getten one today you bitch ass nigga."  (*Id.*)  Plaintiff contends that Defendant Yore's actions amounted to retaliation for Plaintiff's exercise of his First Amendment rights, discrimination, and a violation of the Eighth Amendment.

Plaintiff seeks compensatory and punitive damages.  Plaintiff also seeks injunctive relief in the form of placement in a sexual offender treatment program to improve his eligibility for parole.

## II.    Misjoinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims.  Rule 20(a)(2) governs when multiple defendants may be joined in one action: "[p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the

4

alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action.  It is not concerned with joinder of claims, which is governed by Rule 18.  Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice & Procedure Civil § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), and *Garcia v. Munoz*, No. 08-1648, 2007 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also Neitzke v. Williams*, 490 U.S. 319, 328 (1989) (joinder of defendants is not permitted by Rule 20 unless both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant and involves a common question of law or fact."  *Proctor*, 661 F. Supp. 2d at 778.  When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different

5

geographical locations." *Id.* (quoting *Nali v. Mich. Dep't of Corr.*, No. 07-10831, 2007 WL 4445247, at *3 (E.D. Mich. Dec. 18, 2007)).

Permitting the improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). Under the PLRA, a prisoner may not commence an action without prepayment of the filing fee in some form. *See* 28 U.S.C. § 1915(b)(1). These "new fee provisions of the PLRA were designed to deter frivolous prisoner litigation by making all prisoner litigants feel the deterrent effect created by liability for filing fees." *Williams v. Roberts*, 116 F.3d 1126, 1127-28 (5th Cir. 1997). The PLRA also contains a "three-strikes" provision requiring the collection of the entire filing fee after the dismissal for frivolousness, etc., of three actions or appeals brought by a prisoner proceeding in forma pauperis, unless the statutory exception is satisfied. 28 U.S.C. § 1915(g). The "three strikes" provision was also an attempt by Congress to curb frivolous prisoner litigation. *See Wilson v. Yaklich*, 148 F.3d 596, 603 (6th Cir. 1998).

The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees--for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .

> A buckshot complaint that would be rejected if filed by a free person--say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions--should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168-69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA); *Patton v. Jefferson Corr. Ctr.*, 136 F.3d 458, 464 (5th Cir. 1998); *Shephard v. Edwards*, No. C2-01-563, 2001 WL 1681145, at *1 (S.D. Ohio Aug. 30, 2001) (declining to consolidate prisoner's unrelated various actions so as to allow him to pay one filing fee, because it "would improperly circumvent the express language and clear intent of the 'three strikes' provision"); *Scott v. Kelly*, 107 F. Supp. 2d 706, 711 (E.D. Va. 2000) (denying prisoner's request to add new, unrelated claims to an ongoing civil rights action as an improper attempt to circumvent the PLRA's filing fee requirements and an attempt to escape the possibility of obtaining a "strike" under the "three strikes" rule). To allow Plaintiff to proceed with these improperly joined claims and defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of by § 1915(g), should any of his claims turn out to be frivolous.

Defendant DRF Correctional Officer Bashore is the first Defendant named in the body of the complaint. Two other DRF officials, Defendants Shaffer and Rewerts, are alleged to have engaged in retaliatory conduct on September 13, 2018, either by engaging in active conduct or failing to take action to prevent the retaliatory behavior. The alleged actions by all other Defendants occurred at different times and at different facilities. The actions of the other Defendants are wholly unrelated to the alleged September 2018 conduct by Defendants Bashore, Shaffer, and Rewerts.

Under Rule 21 of the Federal Rules of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Instead, Rule 21 provides two remedial options:

(1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572-73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'"); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *Carney v. Treadeau*, No. 2:07-cv-83, 2008 WL 485204, at *2 (W.D. Mich. Feb. 19, 2008); *Coal. to Defend Affirmative Action v. Regents of Univ. of Mich.*, 539 F. Supp. 2d 924, 940 (E.D. Mich. 2008); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846-47; *Michaels Bldg. Co.*, 848 F.2d at 682.

In this case, Plaintiff brings causes of action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Furthermore,

"Michigan law provides for tolling of the limitations period while an earlier action was pending which was later dismissed without prejudice." *Kalasho v. City of Eastpointe*, 66 F. App'x 610, 611 (6th Cir. 2003).

Plaintiff's allegations against Defendants Bashore, Shaffer, and Rewerts occurred in September 2018.  All actions against the remaining Defendants occurred in 2019, well within the three-year period of limitations.  Those claims are not at risk of being time-barred.

Because Plaintiff's claims against Defendants Bryant, Smith, Rubley, Burke, and Yore are misjoined, the Court will dismiss without prejudice Plaintiff's complaint against them.

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## IV.    Defendant Rewerts

Plaintiff fails to make specific factual allegations against Defendant Rewerts, other than his general claim that Rewerts failed to take action to supervise or discipline his employees. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's

own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Plaintiff has failed

to allege that Defendant Rewerts engaged in any active unconstitutional behavior.  Accordingly,

he fails to state a claim against Defendant Rewerts.

**V.      Defendants Bashore & Shaffer**

Plaintiff alleges that Defendants Bashore and Shaffer have retaliated against him

for filing grievances.  He also alleges that both Defendants have violated his rights under the Eighth

Amendment by issuing false misconducts and taking his property.  Finally, Plaintiff alleges that

Defendants Bashore and Shaffer have violated his right to due process, Bashore by filing false and

retaliatory misconducts against him, and Shaffer by taking his property without due process.

**A.      Retaliation**

Retaliation based upon a prisoner's exercise of his or her constitutional rights

violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).

In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was

engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was

motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to

prove that the exercise of the protected right was a substantial or motivating factor in the

defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.

2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Upon initial review, the Court concludes that Plaintiff's allegations against

Defendants Bashore and Shaffer are sufficient to state a retaliation claim.

**B.      Eighth Amendment**

Plaintiff alleges that Defendants Bashore and Shaffer have violated his Eighth

Amendment rights by filing false misconduct charges and taking Plaintiff's property.

11

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency."  *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities."  *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.  "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'"  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347).  As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Id.*

Plaintiff's allegations against Defendants Bashore and Shaffer fall far short of stating an Eighth Amendment claim.  Being charged with a false misconduct ticket does not implicate a condition intolerable for prison confinement.  *Rhodes*, 452 U.S. at 348.  Moreover, the taking of prisoner property does not subject Plaintiff to such a condition.

Further, to the extent that Plaintiff alleges Defendants Bashore and Shaffer used abusive language, he fails to state an Eighth Amendment claim.  The use of harassing or degrading language by a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions.  *See Ivey v. Wilson*, 832 F.2d 950, 954-55 (6th Cir. 1987); *see also*

12

*Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (harassment and verbal abuse do not constitute the type of infliction of pain that the Eighth Amendment prohibits); *Violett v. Reynolds,* No. 02-6366, 2003 WL 22097827, at *3 (6th Cir. Sept. 5, 2003) (verbal abuse and harassment do not constitute punishment that would support an Eighth Amendment claim); *Thaddeus-X v. Langley*, No. 96-1282, 1997 WL 205604, at *1 (6th Cir. Apr. 24, 1997) (verbal harassment is insufficient to state a claim); *Murray v. U.S. Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) ("Although we do not condone the alleged statements, the Eighth Amendment does not afford us the power to correct every action, statement or attitude of a prison official with which we might disagree."); *Clark v. Turner*, No. 96-3265, 1996 WL 721798, at *2 (6th Cir. Dec. 13, 1996) ("Verbal harassment and idle threats are generally not sufficient to constitute an invasion of an inmate's constitutional rights."); *Brown v. Toombs*, No. 92-1756, 1993 WL 11882 (6th Cir. Jan. 21, 1993) ("Brown's allegation that a corrections officer used derogatory language and insulting racial epithets is insufficient to support his claim under the Eighth Amendment.").

For all these reasons, Plaintiff fails to state an Eighth Amendment claim against Defendants Bashore and Shaffer.

## C. Due Process

Plaintiff alleges that Defendant Bashore violated his right to due process by writing a false misconduct ticket against him, alleging that Plaintiff had engaged in threatening behavior and fighting, though the ticket eventually was reduced to a charge of insolence. Plaintiff also alleges that Defendant Shaffer took his property without due process.

### 1. Defendant Bashore

Plaintiff claims that Defendant Bashore falsely charged him with two Class-I (major) misconduct offenses of "threatening behavior" and "fighting." He also alleges that the

threatening-behavior charge was reduced to a charge of insolence, a Class-II misconduct.[1]  *See* Mich. Dep't of Corr. Policy Directive (PD) 03.03.105, Attach. A & B.

The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).  In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

---

[1] Under Mich. Dep't of Corr. Directive 03.03.105 ¶ A, misconduct charges are classified as Class I, Class II, and Class III.  Class-I misconduct charges are "major" misconduct charges, subject to all hearing requirements set forth in Mich. Comp. Laws § 791.252.  Class-II and Class-III misconducts are considered "minor" misconducts.  PD 03.03.105 ¶ B.

Plaintiff's major misconduct charge and conviction may have affected a number of Plaintiff's interests, but none of them fall into either of the categories identified in *Sandin* as protected by due process, i.e., an inevitable effect on the duration of Plaintiff's sentence or an atypical and significant hardship. As to the first category, Plaintiff has not alleged a deprivation that will inevitably affect the duration of his sentence. A prisoner like Plaintiff, who is serving an indeterminate sentence for an offense committed after 2000, can accumulate "disciplinary time" for a major misconduct conviction. *See* Mich. Comp. Laws § 800.34. Disciplinary time is considered by the Michigan Parole Board when it determines whether to grant parole. *Id.* § 800.34(2). It does not necessarily affect the length of a prisoner's sentence because it is "simply a record that will be presented to the parole board to aid its [parole] determination." *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011).

As to the second category, Plaintiff has not alleged that he suffered a "significant and atypical deprivation." Plaintiff does not indicate that he was placed in administrative segregation as a result of his misconduct proceedings, much less that any placement in segregation was lengthy. Confinement in administrative segregation "is the sort of confinement that inmates should reasonably anticipate receiving at some point in their incarceration." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Thus, it is considered atypical and significant only in "extreme circumstances." *Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010).

Generally, courts will consider the nature and duration of a stay in segregation to determine whether it imposes an "atypical and significant hardship." *Harden-Bey v. Rutter*, 524 F.3d 789, 794 (6th. Cir. 2008). In *Sandin*, the Supreme Court concluded that the segregation at issue in that case (disciplinary segregation for 30 days) did not impose an atypical and significant hardship. *Sandin,* 515 U.S. at 484. Similarly, the Sixth Circuit has held that placement in

administrative segregation for two months does not require the protections of due process.  *See Joseph v. Curtin,* 410 F. App'x 865, 868 (6th Cir. 2010) (61 days in segregation is not atypical and significant).  It has also held, in specific circumstances, that confinement in segregation for a much longer period of time does not implicate a liberty interest.  *See, e.g.*, *Baker,* 155 F.3d at 812-23 (two years of segregation while the inmate was investigated for the murder of a prison guard in a riot); *Mackey v. Dyke,* 111 F.3d 460 (6th Cir. 1997) (one year of segregation following convictions for possession of illegal contraband and assault, including a 117-day delay in reclassification due to prison crowding).  Ordinarily, only periods of segregation lasting for several years or more have been found to be atypical and significant.  *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (13 years of segregation implicates a liberty interest); *Harris v. Caruso,* 465 F. App'x 481, 484 (6th Cir. 2012) (eight years of segregation implicates a liberty interest); *Harden-Bey,* 524 F.3d at 795 (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, *i.e.*, three years without an explanation from prison officials, implicates a liberty interest).

Given Plaintiff's lack of allegations concerning any placement in segregation, much less placement of a substantial duration, he fails to allege that he suffered an atypical and significant deprivation on that basis

The same is true if Plaintiff suffered any loss of yard and phone privileges,  a loss of prison employment, or a loss of ability to participate in a religious program, all of which are expected consequences of confinement in segregation.  If Plaintiff's confinement in segregation does not implicate a protected liberty interest, it follows that the loss of privileges stemming from that confinement do not implicate such an interest.  Furthermore, federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational,

16

rehabilitation, and educational programs under the Fourteenth Amendment.  *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services).  Moreover, "as the Constitution and federal law do not create a property right for inmates in a job, they likewise do not create a property right to wages for work performed by inmates." *Carter*, 69 F. App'x at 680 (citing *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991), and *James v. Quinlan*, 866 F.2d 627, 629-30 (3d Cir. 1989)). Consequently, any loss by Plaintiff of his privileges or wages associated with his prison job did not trigger a right to due process.

To the extent that Plaintiff relies upon prison policies as the source of his right to due process, he fails to state a due process claim.  As the Supreme Court stated in *Sandin*, using "mandatory language in prisoner regulations" as a source for interests protected by due process "stray[s] from the real concerns undergirding the liberty protected by the Due Process Clause." *Sandin*, 515 U.S. at 484.  Prison regulations are "primarily designed to guide correctional officials in the administration of a prison." *Id.* at 482.  They are not designed "to confer rights on inmates[.]" *Id.*  Accordingly, the Court held that state-created interests "will generally be limited to freedom

from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents or prison life." *Id.* (citations omitted). Plaintiff has not alleged that Defendants imposed such a restraint on him.

Furthermore, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he utterly fails to identify what process he was denied. In *Wolff v. McDonnell,* 418 U.S. 539 (1974), the Supreme Court held that prison disciplinary proceedings implicating a liberty interest must provide the following minimum process: (i) at least 24 hours of advance notice of the charges, (ii) the right to call witnesses and to present evidence in the inmate's defense, (iii) an impartial tribunal, and (iv) a written statement of evidence relied on by the disciplinary board and the reasons for the disciplinary action. *Id.* at 563-69.

Plaintiff does not allege any defects in the process he received. Indeed, he acknowledges that he received a hearing, because he represents that one of his misconduct charges was reduced at that hearing. Plaintiff appears to suggest only that Defendant Bashore should not have charged him or allowed the charge to proceed because it was retaliatory and, therefore, false. However, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* them. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("[T]he deprivation by state action of a constitutionally protected interest in 'life, liberty or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*.") (emphasis in original).

For all the foregoing reasons, Plaintiff does not state a procedural due process claim against Defendant Bashore.

Plaintiff also arguably intends to allege that Defendant Bashore violated his right to substantive due process by falsely accusing Plaintiff of threatening behavior and fighting.

18

"Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X v. Blatter*, 175 F.3d 378, 388 (6th Cir. 1999); *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

Plaintiff utterly fails to allege conscience-shocking conduct by Defendant Bashore. Although Plaintiff suggests that he was "set up" for fighting and threatening-behavior misconduct charges, he does not allege that Defendant Bashore relied on any fabricated evidence or other egregious conduct. Instead, he complains that the misconduct charges were retaliatory.

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386,

395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)).  If such an amendment exists, the substantive due process claim is properly dismissed.  *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment that applies to Plaintiff's claims.  The First Amendment provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims.  Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied.  *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection for retaliation claims); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim.").  Consequently, Plaintiff's substantive due process claim will be dismissed.

**2.     Defendant Shaffer**

Plaintiff alleges that Defendant Shaffer took some of his property without due process.

Plaintiff's due process claim is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986).  Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy.  If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law."  *Parratt*, 451 U.S. at 537.  This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state

20

procedure.  *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984).  Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies.  *See Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993).  Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due-process action.  *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case.  Plaintiff has not alleged that state post-deprivation remedies are inadequate.  Moreover, numerous state post-deprivation remedies are available to him.  First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation.  Mich. Dep't of Corr., Policy Directive 04.07.112, ¶ B (effective Dec. 12, 2013).  Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board.  Mich. Comp. Laws § 600.6419; MDOC Policy Directive 03.02.131 (effective Oct. 21, 2013).  Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies."  Mich. Comp. Laws § 600.6419(1)(a).  The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property.  *See Copeland*, 57 F.3d at 480.  Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.  Accordingly, Plaintiff's due process claim against Defendant Shaffer will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Bryant, Smith, Rubley, Burne, and Yore will be dismissed from the action without prejudice because they are misjoined.  Defendant Rewerts will be dismissed for

failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, due process and Eighth Amendment claims against remaining Defendants Bashore and Shaffer.   Plaintiff's retaliation claims against Defendants Bashore and Shaffer remain in the case.

An order consistent with this opinion will be entered.

Dated:   April 20, 2020                                  /s/ Paul L. Maloney
                                                         Paul L. Maloney
                                                         United States District Judge